**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF TEXAS**

**MARSHALL DIVISION**

| INNOVA PATENT LICENSING, LLC | § | Civil Action No. 2:10-CV-251 |
| --- | --- | --- |
| v. | § § § § | |
| 3COM CORPORATION, et al. | § § § § § § § | **Jury Trial Requested** |

**DEFENDANT SYMANTEC CORPORATION'S MOTION TO DISMISS PLAINTIFF INNOVA PATENT LICENSING, LLC'S COMPLAINT PURSUANT TO 35 U.S.C. § 101**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ..................................................................................................................1

II. STATEMENT OF FACTS ....................................................................................................1

III. ARGUMENT..........................................................................................................................3

    A. The Threshold Legal Issue of Patentability Under 35 U.S.C. § 101 Should Be Decided at This Time, on a Motion to Dismiss...................................................3

    B. The '761 Patent Claims Are Invalid Under 35 U.S.C. § 101 Because They Are Directed to an Abstract Idea ........................................................................................4

        1. The '761 patent is not tied to a particular machine...................................6
        2. The '761 patent does not transform any article. ........................................8
        3. The '761 patent attempts to claim an abstract idea, which is not permitted. .................................................................................................9
        4. Numerous post-*Bilski* decisions confirm that the '761 patent claims are invalid..................................................................................................10

IV. CONCLUSION.....................................................................................................................12

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009) ................................................................................................. 3

*Bilski v. Kappos*,
  130 S. Ct. 3218 (2010) .......................................................................................... passim

*Cuvillier v. Sullivan*,
  503 F.3d 397 (5th Cir. 2007) ..................................................................................... 3, 4

*DealerTrack, Inc. v. Huber*,
  657 F.Supp.2d 1152 (C.D. Cal. Jul. 7, 2009) ............................................................... 8

*Ex Parte Birger*,
  No. APL 2009-006556, 2010 WL 2800803 (B.P.A.I. July 13, 2010) ................... 11, 12

*Ex Parte Estrada*,
  No. APL 2009-012192, 2010 WL 3389278 (B.P.A.I. Aug. 26, 2010) ................... 11, 12

*Ex parte Halligan*,
  89 U.S.P.Q.2d 1355 (B.P.A.I. 2008) ............................................................................. 8

*Ex Parte Proudler,*
  No. APL 2009-006599, 2010 WL 2727840 (B.P.A.I. July 8, 2010) ..................... 10, 11, 12

*Gottschalk v. Benson*,
  409 U.S. 63 (1972) ..................................................................................................... 4, 8

*In re Bilski*,
  545 F.3d 943 (Fed. Cir 2008) ................................................................................ passim

*In re Ferguson*,
  558 F.3d 1359 (Fed. Cir. 2009) ..................................................................................... 6

*Lovelace v. Software Spectrum*,
  78 F.3d 1015 (5th Cir. 1996) ......................................................................................... 3

*Ultramercial, LLC et al. v. Hulu, LLC et al.*,
  Case No. 09-CV-069180-RGK, 2010 WL 3360098 (C.D. Cal. Aug. 13, 2010) ......... 4, 8, 10, 12

**STATUTES**

35 U.S.C. § 101 .............................................................................................................. passim

**RULES**

Fed. R. Civ. P. 12(b)(6)........................................................................................................... 1, 2, 3, 4

Local Rule CV-5(a)(3)....................................................................................................................... 15

**OTHER AUTHORITIES**

Interim Guidance for Determining Subject Matter Eligibility for Process Claims in View
  of *Bilski v. Kappos* (*Interim Bilski Guidance*),
  75 Fed. Reg. 43923 (July 27, 2010) ............................................................................. 8, 10, 11

*Subject Matter Eligibility of Computer Readable Media*,
  1351 Off. Gaz. Pat. Office 212 (Feb. 23, 2010). ...................................................................... 13

I. **INTRODUCTION**

The three claims of the patent-in-suit are invalid because they are directed to abstract ideas, which are not patentable. 35 U.S.C. § 101; *Bilski v. Kappos*, 130 S. Ct. 3218, 3225 (2010) (hereinafter "*Bilski*"). The claims are directed to little more than the idea of obtaining "context information" about the sender of an electronic message. These are precisely the type of patent claims that the Supreme Court, the Federal Circuit, numerous district courts and Board of Patent Appeals and Interferences have held to be invalid under § 101.

The Court need not wait to decide this issue. Patentability under § 101 is purely a legal issue. This motion is based solely upon the complaint and the attached patent-in-suit. Because the patent's claims are invalid as a matter of law, the complaint fails to state a claim upon which relief can be granted. Accordingly, the Court should dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

II. **STATEMENT OF FACTS**

Plaintiff InNova Patent Licensing filed its complaint on July 20, 2010. The complaint alleges that Symantec Corp. and 35 other defendants have been, and currently are, infringing U.S. Patent No. 6,018,761 by "making, using, offering to sell, and/or selling e-mail filtering software and/or hardware." (Dkt. No. 1 at ¶¶ 44-79.)

The '761 patent has a total of three claims, all of which are method claims. Claim 1 generally recites steps relating to using a "reference" to obtain "context information" about "a sender of an electronic message." (Dkt. No. 1, Ex. A at col. 8:16-41.) The patent describes a sender's "context information" as "information about the sender or the message that is useful to the recipient in understanding more about the context in which the sender sent the message." (*Id*. at col. 8:23-26.) Dependent claim 2 recites a limitation that the "reference" used to obtain "context information" is "a location where context information is stored." (*Id*. at col. 8:36-38.)

Similarly, in dependent claim 3, the "reference" is "a hint usable to retrieve a location where context information is stored." (*Id*. at col. 8:39-41.) The claims are reproduced in their entirety below:

> 1. A method of obtaining context information about a sender of an electronic message using a mail processing program, comprising the steps of:
>
> scanning the message, using the mail processing program, to determine if the message contains a reference in a header portion of the message to at least one feature of the sender's context, wherein the sender's context is information about the sender or the message that is useful to the recipient in understanding more about the context in which the sender sent the message;
>
> if the message contains such reference, using the mail processing program and such reference to obtain the context information from a location external to the message;
>
> if the message does not contain such reference, using the mail processing program and information present in the message to indirectly obtain the context information using external reference sources to find a reference to the context information.
>
> 2. The method of claim 1, wherein the reference to at least one feature is a reference to a location where context information is stored.
>
> 3. The method of claim 1, wherein the reference to at least one feature is a hint usable to retrieve a location where context information is stored.

(*Id*. at col. 8:16-41 (incorporating corrections from certificate of correction).)

The claims do not recite any steps or operations beyond "scanning the message" and "obtain[ing] the context information." (*See id*.) Further, none of the claims of the '761 patent recites any hardware or machine. (*See id*.)

**SYMANTEC'S MOTION TO DISMISS** 2

### III. ARGUMENT

#### A. The Threshold Legal Issue of Patentability Under 35 U.S.C. § 101 Should Be Decided at This Time, on a Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, a complaint "must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007) (internal citations and quotations omitted). In deciding a Rule 12(b)(6) motion, courts consider documents attached to or incorporated into the complaint as well as facts alleged in the complaint. *Lovelace v. Software Spectrum*, 78 F.3d 1015, 1017 (5th Cir. 1996). Although *factual* allegations are taken as true, *legal* conclusions are given no deference – those matters are left for the court to decide. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (the tenet that allegations are taken as true on a motion to dismiss "is inapplicable to legal conclusions"). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief [as a matter of law], this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier*, 503 F.3d at 401(internal citations and quotations omitted).

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *In re Bilski*, 545 F.3d 943, 950-51 (Fed. Cir 2008) (*en banc*) (hereinafter "*In re Bilski*"), *aff'd*, 130 S. Ct. 3218 (2010). In order to be actionable, a patent's claims must be drawn to patent-eligible subject matter under § 101. *Id*. at 950. Accordingly, the § 101 inquiry is properly raised on a motion to dismiss under Rule 12(b)(6). *See, e.g.*, *Ultramercial, LLC et al. v. Hulu, LLC et al.*, Case No. 09-CV-

069180-RGK, 2010 WL 3360098 at *1 (C.D. Cal. Aug. 13, 2010) (granting a Rule 12(b)(6) motion to dismiss because the patent in suit did not cover patentable subject matter under § 101).

The Court need only review the patent to decide the discrete, case-dispositive legal issue presented by this motion. The patent has one independent method claim and two dependent claims, totaling only twenty-six lines. (Dkt. No. 1, Ex. A at col. 8:16-41.) The specification contains four figures and less than eight columns of text. (*See id.*) The record necessary to decide the issue of patentability under § 101 is short and fully developed.

Moreover, deciding the threshold issue of patentability now is an efficient use of judicial and litigant resources. Deferring this discrete legal issue would lead to millions of dollars in litigation expenditures by 36 defendants, *e.g.*, expenditures relating to investigation, disclosures, and discovery, which will turn out to have been unnecessary if the issue of patentability is decided in defendants' favor. Accordingly, Symantec respectfully asks the Court to decide the discrete legal issue raised by this motion now – "the point of minimum expenditure of time and money by the parties and the court." *Cuvillier*, 503 F.3d at 401.

**B.    The '761 Patent Claims Are Invalid Under 35 U.S.C. § 101 Because They Are Directed to an Abstract Idea**

Section 101 of the Patent Act defines four categories of patentable subject matter: processes, machines, manufactures, and compositions of matter. 35 U.S.C. § 101. Of these four permitted categories, the only one which would potentially cover the '761 patent claims is "processes."[1] However, "mental processes, and abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972). As the Supreme Court further emphasized in *Bilski*, "abstract ideas" are not

---

[1] The term "process" in the Patent Act means "process, art or method." 35 U.S.C. § 100(b). Thus, the terms "method claim" and "process claim" are used synonymously in this motion.

**SYMANTEC'S MOTION TO DISMISS**          4

patentable subject matter." 130 S. Ct. at 3229-30 (finding that the purported method claims at issue did not claim patent-eligible processes but rather abstract ideas.). Such ideas "are part of the storehouse of knowledge of all men . . . free to all men and reserved exclusively to none." *Id.* at 3225 (internal quotations and citations omitted).

The '761 patent nominally claims a method. However, like the claims the Supreme Court found to be invalid in *Bilski*, all three claims of the '761 patent are invalid because they are directed at an abstract idea.

The principal test for distinguishing between patent-eligible processes and patent-ineligible abstract ideas is the "machine-or-transformation" test.[2] Under that test, a process claim is not patentable unless it either (1) is tied to a particular machine, or (2) transforms a particular article from one thing into another. Further, the claimed machine or transformation must impose meaningful limits on the claim's scope; it must not be merely insignificant extra-solution activity.[3]

As articulated by the Federal Circuit:

> The machine-or-transformation test is a two-branched inquiry; an applicant may show that a process claim satisfies § 101 either by showing that his claim is tied to a particular machine, or by showing that his claim transforms an article. Certain considerations are applicable to analysis under either branch. First, as illustrated by *Benson* and discussed below, the use of a specific

---

[2] The '761 patent issued in January 2000, over eight years before the Federal Circuit articulated its "machine or transformation" test. Thus, the Patent Examiner did not employ that test during his review of the application or as part of his decision to allow the patent claims to issue.

[3] In *Bilski*, the Supreme Court reaffirmed that patentability under § 101 is a threshold legal issue and held that the patent at issue there was not drawn to a patent-eligible process because it attempted to claim an abstract idea. In reaching its decision, the Court endorsed the Federal Circuit's machine-or-transformation test as "a useful and important clue, an investigative tool, for determining whether some claimed inventions are processes under § 101." 130 S. Ct. at 3227. Although the Court left open the *possibility* that some processes failing the machine-or-transformation test may be patent-eligible, it declined to offer any alternative to the test. *Id.* at 3229.

**SYMANTEC'S MOTION TO DISMISS**        5

> machine or transformation of an article must impose meaningful
> limits on the claim's scope to impart patent-eligibility.  Second, the
> involvement of the machine or transformation in the claimed
> process must not merely be insignificant extra-solution activity.

*In re Bilski*, 545 F.3d at 961-62 (internal citations omitted).

The three claims of the '761 patent fail this test.  The claims do not recite any machine or article, much less the transformation of an article.  Instead, the claims are directed to the abstract idea of taking an electronic message and obtaining more "context" information regarding the sender.  As such, the claims are invalid.  This conclusion is consistent with the decisions of courts and the Board of Patent Appeals and Interferences applying the post-*Bilski* standard for patentability under § 101.

### 1. The '761 patent is not tied to a particular machine.

To satisfy the "machine" branch of the machine-or-transformation test, a claim must be "*tied* to a *particular* machine" or a "*specific* machine or apparatus."  *In re Bilski*, 545 F.3d at 961-62 (emphases added).  A "machine" is a "concrete thing, consisting of parts, or of certain devices and combination of devices."  *In re Ferguson*, 558 F.3d 1359, 1364 (Fed. Cir. 2009) (internal quotation marks omitted).  Even claims that recite a particular machine may still fail the "machine" branch of the test if (1) the involvement of the machine in the claimed process is insignificant, or (2) the use of the specific machine does not impose meaningful limits on the claim's scope.  *In re Bilski*, 545 F.3d at 961-62.  As explained by the Supreme Court, "limiting an abstract idea to one field of use or adding token postsolution components [does] not make [a] concept patentable."  *Bilski*, 130 S. Ct. at 3231.

Since *Bilski*, the United States Patent and Trademark Office ("USPTO") has issued "Interim Guidance for Determining Subject Matter Eligibility for Process Claims in View of *Bilski v. Kappos* (*Interim Bilski Guidance*)."  75 Fed. Reg. 43923 (July 27, 2010).  Consistent

with the machine-or-transformation test as articulated by the Federal Circuit, the *Interim Bilski Guidance* provides additional detail regarding the relevant factors to consider relating to the "machine" branch of the test: (1) "whether the method involves or is executed by a *particular* machine"; (2) "the degree to which the machine in the claim can be *specifically* identified (not any and all machines)"; and (3) "whether [the machine's] involvement is extrasolution activity or a field-of-use . . . . Use of a machine or apparatus that contributes only nominally or insignificantly to the execution of the claimed method (e.g., in a *data gathering step* or in a field-of-use limitation) would weigh against eligibility." *Id*. at 43925 (emphases added). The *Interim Bilski Guidance* further points out that a claim may be drawn to an abstract idea – and thus be invalid – if "the claim is so abstract and sweeping as to cover both known and unknown uses of the concept, and be performed through any existing or future-devised machinery, or even without any apparatus." *Id*.

Under either the Federal Circuit's articulation of the "machine" branch or the relevant aspects of the USPTO's *Interim Bilski Guidance*, all three of the claims of the '761 patent unquestionably fail to be tied to a particular machine. None of the claims of the '761 patent recites any machine whatsoever. Rather, each recites a method of "obtaining" what the claim calls "context information" about the sender of an electronic message using a "reference" and a "mail processing program." (Dkt. No. 1, Ex. A at col. 8:16-41.) Nothing in the claim language specifies a particular machine or apparatus as required to tie the claims to a machine in a meaningful way. *In re Bilski*, 545 F.3d at 961-62.

Even if the claims were somehow characterized as reciting the use of a general purpose computer (which they do not), that would still be insufficient to convey patentability. *See*, *e.g.*, *Ultramercial, LLC v. Hulu, LLC*, 2010 WL 3360098 at *5 (C.D. Cal. Aug. 13, 2010) ("One

**SYMANTEC'S MOTION TO DISMISS**  7

cannot circumvent the patentability test by merely limiting the use of the invention to a computer."); *Gottschalk v. Benson*, 409 U.S. 63, 64 (1972) (holding that a method directed to "general-purpose digital computers" was not patentable); *DealerTrack, Inc. v. Huber*, 657 F.Supp.2d 1152, 1156 (C.D. Cal. July 7, 2009) (finding that a number of devices, including a general purpose computer, did not constitute a "'particular machine' within the meaning of *Bilski*."). Allowing the recitation of a general purpose computer in combination with purely functional steps to form the basis for patentability would "exalt form over substance" and permit preemption of fundamental principles or abstract ideas by the mere addition of a "computer." *Ex parte Halligan*, 89 U.S.P.Q.2d 1355, 1365 (B.P.A.I. 2008). Thus, the claims of the '761 patent fail the "machine" aspect of the "machine-or-transformation" test.

### 2. The '761 patent does not transform any article.

To satisfy the "transformation" branch of the machine-or-transformation test, a claim must "transform[] an article into a different state or thing." *In re Bilski*, 545 F.3d at 962. As with the "machine" branch, the transformation may not be insignificant and must impose meaningful limits on the execution of the claimed method steps, *i.e.*, "it must be central to the purpose of the claimed process." *Id*. Further, the Federal Circuit has "frequently stated that adding a data-gathering step to an algorithm is insufficient to convert that algorithm into a patent-eligible process." *Id*. at 963. "[T]he inherent step of gathering data can also fairly be characterized as insignificant extra-solution activity." *Id*.

The USPTO's *Interim Bilski Guidance* also sets forth factors relevant to considering whether a qualifying "transformation" has occurred: (1) "the *particularity* or generality of the transformation . . . [a] more particular transformation would weigh in favor of eligibility"; (2) "[t]he degree to which the *recited article is particular* . . . [a] transformation applied to a generically cited article would weigh against eligibility"; (3) "[t]he nature of the

**SYMANTEC'S MOTION TO DISMISS**  8

transformation . . ., for instance by having a different function or use . . . *compared to merely having a different location, which would weigh against eligibility*"; (4) "[t]he nature of the article transformed, *i.e.*, whether it is an object or substance, weighing toward eligibility"; and (5) "a transformation that contributes only nominally or insignificantly to the execution of the claimed method (*e.g.*, in *a data gathering step or in a field-of-use limitation*) *would weigh against eligibility*." 75 Fed. Reg. 43925 (emphases added).

Just as the claims of the '761 patent fail to recite a particular machine, they fail to identify any article or thing that is transformed in any way. The claims recite only two active steps: (1) "scanning" a "message," and (2) "obtaining" what is described as "context information." (Dkt. No. 1, Ex. A at col. 8:16-41.) The "transformation" inquiry begins and ends at the fact that neither of these steps identifies any article to be transformed, nor do they specify any activity that could transform an article if one were identified.[4]

### 3. The '761 patent attempts to claim an abstract idea, which is not permitted.

The '761 patent attempts to claim an abstract idea, not a patentable process. The core of the patent claims is the abstract (and basic) idea of retrieving additional information about the sender of an electronic message based on the information already available. Beyond this idea, the additional elements of the patent claims are mere field of use or token extra-solution components. Those elements, although limiting in some regard, are not sufficient to transform an abstract idea into patent-eligible subject matter. *Bilski*, 130 S. Ct. at 3231. Indeed, the claims

---

[4] Even if InNova were to contend that the location of the claimed "context information" is somehow changed by virtue of being "obtained," that argument would not be supported by the claims, which do not specify what happens to the context information when it is "obtained." Further, "obtaining context information" necessarily can only be described as a "data gathering step," which the Federal Circuit has held insufficient to form the basis for patentability. *In re Bilski*, 545 F.3d at 963.

are directed to a statement of the problem – the need to obtain additional information based on some subset of the available information – rather than a particular solution to the problem. This is a factor that the USPTO's *Interim Bilski Guidance* identifies as indicative that a claim is drawn to an abstract idea. 75 Fed. Reg. 43926.

### 4. **Numerous post-*Bilski* decisions confirm that the '761 patent claims are invalid.**

Since *Bilski*, several recent decisions by courts and the Board of Patent Appeals and Interferences have rejected patents that attempt to claim abstract ideas like that claimed in the '761 patent. For example, in *Ultramercial*, the court addressed a patent that claimed a process of displaying an advertisement in exchange for access to copyrighted media. *Ultramercial*, 2010 WL 3360098 at *1. Although the claims at issue recited steps relating to "distribution of products over the Internet via a facilitator" and a "media product [being] downloaded to the memory of a personal computer of the consumer," the court determined that neither of the branches of the machine-or-transformation test was satisfied. *Id*. at *4-5. The court found that the patent attempted to claim the idea that one can use advertisements as an exchange or currency, and the additional limitation "[t]hat the exchange (advertisement for media) is carried over the Internet, through a facilitator, using passwords and activity logs, does not limit the patent in a meaningful way." *Id*. at 6. As the court put it, "[t]he patent still discloses an abstract idea garnished with accessories." *Id*.

Similarly, in *Ex Parte Proudler*, the Board of Patent Appeals and Interferences rejected under § 101 patent claims directed to "controlling the processing of data" by "defining security controls for…data items." No. APL 2009-006599, 2010 WL 2727840, at *2 (B.P.A.I. July 8, 2010). The Board explained that the claimed invention was "directed to software per se, abstract ideas, abstract concepts, and the like, including data per se, data items, data structures, usage

**SYMANTEC'S MOTION TO DISMISS**       10

rules, and the abstract intellectual processes associating them," which the Board has repeatedly held to be nonstatutory subject matter under § 101.  *Id*. at 4.  Because the claimed invention's "computer apparatus" was characterized as simply "'programming for' achieving certain abstract functionality," the Board determined that "no true hardware structure [was] recited" and rejected the claims.  *Id*. at 5.

In *Ex Parte Estrada*, the Board considered claims described as a method for managing membership in a collaborative computing environment community.  No. APL 2009-012192, 2010 WL 3389278, at *1 (B.P.A.I. Aug. 26, 2010).  The Board determined that the claims at issue would be interpreted by one of ordinary skill in the art as providing "a series of instructions that do no more than receive one type of information, evaluate that information, invite, and receive another type of invitation from an invitee."  *Id*. at *3.  In determining that the claims at issue attempted to claim an abstract idea and were not patentable under § 101, the Board stated that the relevant factors it considered were "the lack of recitations in the claims to a machine or transformation and that the claims are mere statements of a general concept."  *Id*.

In *Ex Parte Birger*, the Board considered an invention involving "[a] computer architecture for enterprise device applications provid[ing] a real-time, bi-directional communication layer," including a step of "transmit[ting] a message between two devices identified by a global address."  No. APL 2009-006556, 2010 WL 2800803, at *1 (B.P.A.I. July 13, 2010).  The Board held the claims ineligible for patenting under § 101 because "the disclosed and claimed invention [was] directed to software per se, abstract ideas, abstract concepts, and the like, including *data per se*, *data items*, *messages*, *addresses*, *identities*, *data structures*, software layers, software applications, software protocols, and the abstract intellectual processes associated with them."  *Id*. at *3 (emphasis added).  Further, the Board noted that because the

computer-readable medium disclosed in the claims "includes and encompasses signals per se, and because it is disclosed to be directed to internet-based communications media, [the claims] are inclusive of transitory signaling embodiments" proscribed by case law.  *Id.*; *see also Subject Matter Eligibility of Computer Readable Media*, 1351 Off. Gaz. Pat. Office 212 (Feb. 23, 2010).

The claims of the '761 patent are invalid for the same reasons articulated in *Ultramercial*, *Proudler*, *Estrada* and *Birger*.  Like *Ultramercial*, the '761 patent is not tied to any particular machine or transformation.  It lacks even the token step of transferring data to a particular computer (which still would not show a machine or transformation).  Like *Proudler*, the "method" claimed in the '761 patent is targeted to achieving certain abstract functionality, something that is insufficient to show patentability.  As in *Estrada*, the '761 patent claims describe the abstract idea of receiving information, evaluating it, and performing an action.  Moreover, *Birger* and other decisions by the Board make clear that data items, messages, addresses, identities, and data structures are abstract concepts or ideas—not patent-eligible subject matter under § 101. Consistent with Supreme Court authority and these decisions applying the post-*Bilski* standard under similar circumstances, this Court should determine that the '761 patent fails to claim patentable subject matter under 35 U.S.C. § 101.

## IV.   CONCLUSION

For the foregoing reasons, the claims of the '761 patent are not drawn to patent-eligible subject matter under 35 U.S.C. § 101.  Accordingly, Symantec respectfully requests that the Court dismiss InNova's complaint on the grounds that it fails to state a claim.

Dated: September 27, 2010             RESPECTFULLY SUBMITTED,

/s/ *Michael E. Jones*
Michael E Jones
POTTER MINTON, PC
110 N. College, Suite 500
Tyler, Texas 75702
(903) 597-8311
(903) 593-0846 Telefax
mikejones@potterminton.com

Mark A. Flagel
LATHAM & WATKINS LLP
355 South Grand Avenue
Los Angeles, CA 90071-1560
Tel: 213-485-1234
Fax: 213-891-8763

Dean G. Dunlavey
LATHAM & WATKINS LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Tel: (714) 540-1235
Fax: (714) 755-8290

ATTORNEYS FOR DEFENDANT SYMANTEC CORPORATION

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 27th day of September, 2010, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this Defendant Symantec Corporation's Motion to Dismiss Plaintiff InNova Patent Licensing, LLC's Complaint Pursuant to 35 U.S.C. § 101 via the Court's CM/ECF system per Local Rule CV-5(a)(3) the 27th day of September, 2010.  Any other counsel of record will be served by facsimile transmission and/or first class mail.

By:/s/ *Michael E. Jones*
     Michael E. Jones